IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEN JOHANSEN, on behalf of himself and others similarly situated, | :<br>:  Case No. 8:16-cv-00486<br>: |
| Plaintiff, | :  **CLASS ACTION COMPLAINT**<br>: |
| v. | :<br>: |
| MUTUAL OF OMAHA INSURANCE COMPANY, AMERI QUOTE INSURANCE AND FINANCIAL RESOURCES, INC. | :  **Demand for Jury Trial**<br>:<br>: |
| Defendants. | :<br>: |

**Preliminary Statement**

1. Plaintiff Ken Johansen ("Plaintiff" or "Mr. Johansen") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Mr. Johansen alleges that Defendant Ameri Quote Insurance and Financial Resources, Inc. ("Ameri Quote") sent him and other putative class members telemarketing calls without their prior express written consent. It did so despite the fact that the putative class members registered their numbers on the National Do Not Call Registry.

3. The calls were made pursuant to an agreement with Defendant Mutual of Omaha Insurance Company ("Mutual of Omaha"), which hired Ameri Quote to generate new business, and did so with the knowledge that Ameri Quote would be telemarketing for the purposes of advertising its goods and services.

4. Mr. Johansen never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Johansen brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

5. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Ken Johansen is a resident of the state of Ohio.

7. Defendant Mutual of Omaha Insurance Company is a Nebraska corporation that has its principal office at Mutual of Omaha Plaza, Omaha, Nebraska 68175, and a registered agent of "General Counsel" at the same address.

8. Defendant Ameri Quote Insurance and Financial Resources, Inc. is a Colorado corporation that transacts business throughout the United States, including into this District. Ameri Quote has its principal office at 1015 West Horsetooth Road, Suite 204, Fort Collins, Colorado 80526, and has a registered agent of Jack Krier at the same address.

**Jurisdiction & Venue**

9. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member from a different state.

10. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were contracted from this District, and several putative class members reside in this District. Finally, venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial District.

## TCPA Background

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

15. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of

the TCPA, can sue the violator and seek statutory damages and injunctive relief. 47 U.S.C. § 227(c)(5).

16. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

## Factual Allegations

17. Plaintiff Johansen is a "person" as defined by 47 U.S.C. § 153(39).

18. Mr. Johansen's home telephone number, (614) 791-XXXX, has been on the National Do Not Call Registry for more than seven years prior to receipt of the calls from the Defendants.

19. Mr. Johansen has never removed his residential telephone number from the National Do Not Call Registry.

### Calls from Ameri Quote

20. Over the past two months Mr. Johansen has received repeated calls from the Defendants, including on the following dates:

   a. August 29, 2016

   b. September 6, 2016

   c. September 16, 2016

   d. September 28, 2016

   e. September 30, 2016

   f. October 3, 2016

   g. October 5, 2016

    h.   October 6, 2016

21. All of the calls came from the Caller ID (614) 493-2060, which is an Ohio exchange.

22. Upon information and belief, the Caller ID for the telemarketing calls was manipulated by Ameri Quote to make them appear to be coming from a company local to Plaintiff. Upon information and belief, it is Ameri Quote's policy, pattern, or practice to spoof its Caller ID to appear local to call recipients in order to trick them into answering its telemarketing calls.

23. Mr. Johansen answered the September 30, 2016 call, and the caller, Ameri Quote, informed Mr. Johansen that he was being called for purposes of selling an insurance policy, but then Ameri Quote disconnected the call.

24. On the October 6, 2016 call Mr. Johansen again answered, and the Ameri Quote telemarketing representative spoke to Plaintiff for a few minutes, and then "warm transferred" the call to "Cheryl" at Mutual of Omaha, who attempted to sell Plaintiff an insurance policy.

25. The purpose of these calls was to generate sales for Mutual of Omaha.

26. Plaintiff is not a customer of Mutual of Omaha or Ameri Quote, and has not provided Defendants with his personal information or telephone number or otherwise consented to receive telemarketing from them.

27. On information and belief, one or both Defendants obtained Plaintiff's residential number by purchasing or obtaining a "lead list" from a third-party source such as Salesgenie.

28. To the extent Defendants contend that they obtained consent or agreement from Plaintiff and the class members for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an

affirmative defense under the TCPA, and is unavailable unless Defendants can show that they had it. They did not.

29. The TCPA also allows as an affirmative defense that a caller may avoid liability if it maintained "has established and implemented, with due care, reasonable practices and procedures to effectively prevent [illegal] telephone solicitations." Defendants, and each of them, fail to satisfy this standard (for which they bear the burden of proof), because they indeed failed to establish and implement, with due care, reasonable practice sand procedures to effectively prevent telephone solicitations that violate the TCPA.

### Mutual of Omaha's Liability and its Arrangement with Ameri Quote

30. Defendants are each a "person," as defined by 47 U.S.C. § 153(39).

31. The Federal Communication Commission has instructed that sellers such as Mutual of Omaha may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

32. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

33. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

34. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

35. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

36. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

37. Ameri Quote made telemarketing calls described herein "on behalf of" Mutual of Omaha within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

38. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

7

seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28  FCC Rcd at 6592 (¶ 46).

39.    Mutual of Omaha is directly liable for the Ameri Quote telemarketing calls because it actively participated in those calls through guidelines it directed Ameri Quote to follow.

40.    Mutual of Omaha is also directly liable for the Ameri Quote telemarketing calls because it actively participated in the calls by "allow[ing] the outside sales entity access to information and systems that normally would be within the seller's exclusive control", when it allowed Ameri Quote access to its telemarketing calling system because Ameri Quote was able to automatically transfer the Plaintiff to a Mutual of Omaha representative during the October 6, 2016 call.

41.    Mutual of Omaha knowingly and actively accepted this business, which originated through the illegal telemarketing calls from Ameri Quote. Indeed, Mutual of Omaha employees marketed its products and services to Plaintiff on one of these very calls.

42.    Mutual of Omaha maintains interim control over its agents' actions, both as to telemarketing and other activities by directing the content of their agents' advertising as well as approving the scripting that is used.

43.    Mutual of Omaha knew (or reasonably should have known) that Ameri Quote was violating the TCPA on its behalf, and failed to take effective steps within its power to force

the telemarketer to cease that conduct. Any reasonable seller that accepts "warm transfer" calls from lead generators would, and indeed *must*, investigate to ensure that those calls were made in compliance with the National Do Not Call Registry rules and regulations.

44. By engaging Ameri Quote to make calls on behalf of its agents to generate new business, Mutual of Omaha "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency. Similarly, by accepting these contacts, Ameri Quote "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Mutual of Omaha, as described in the Restatement (Third) of Agency. Ameri Quote is an agent of Mutual of Omaha.

45. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46). Mutual of Omaha cloaked Ameri Quote with apparent authority to telemarket on its behalf by accepting and marketing to consumers whom Ameri Quote had called.

**Class Action Allegations**

46. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

47. The class of persons Plaintiff proposes to represent is tentatively defined as all persons within the United States whose phone numbers were registered on the Do Not Call

Registry, and who, within the four years before the filing of the initial Complaint, through the date of class certification, received more than one telemarketing call within any twelve-month period from, or on behalf of, Defendants.

48. Excluded from the class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

49. The class as defined above is identifiable through phone records and phone number databases.

50. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

51. Plaintiff is a member of the class.

52. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendants violated the TCPA by calling individuals on the National Do Not Call Registry;

    b. Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

    c. Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendants' actions.

53. Plaintiff's claims are typical of the claims of class members.

54. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the

class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

55. The actions of the Defendants are generally applicable to the class as a whole and to Plaintiff.

56. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

57. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

58. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Do Not Call provisions

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. The Defendants violated the TCPA by (a) initiating telephone solicitations to persons whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

61. The Defendants' violations were negligent and/or knowing.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers that are on the Do Not Call Registry, pursuant to 47 U.S.C. § 227(c)(5);

B. Because of Defendants' violations of 47 C.F.R. § 64.1200(c), Plaintiff Johansen seeks for himself and the other Class members whose telephone numbers were called at least twice within any 12-month period despite being registered with the National Do Not Call Registry, up to $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(5);

C. An award of attorneys' fees and costs to counsel for Plaintiff and the Class, as permitted by law;

D. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable. Plaintiff requests that trial of this case take place in Omaha, Nebraska.**

Dated: October 25, 2016

KEN JOHANSEN, on behalf of himself and others similarly situated,

By: **Alexander H. Burke**
Bar Number: 6281095 (Ill.)
Attorney for Plaintiff Johansen
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288
Fax: (312) 729-5289
E-mail: aburke@burkelawllc.com